## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **KRISTEN M. SPALT,** | ) | **Chapter 7** |
| | ) | **Case No. 16-10131-JEB** |
| Debtor | ) | |
| | ) | |
| **DONALD R. LASSMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding** |
| | ) | **No. 18-01032-JEB** |
| **KRISTEN M. SPALT, individually and as** | ) | |
| **Trustee of the KG Family Trust,** | ) | |
| **JAMES E. SPALT, ERIC SPALT,** | ) | |
| **ANDREW SPALT, GEORGE SPALT,** | ) | |
| **CARLY SPALT, EDWARD SPALT,** | ) | |
| **CAROLINE SPALT, and JAMES G. SPALT,** | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## MEMORANDUM OF DECISION

This matter came before the Court on the First Amended Complaint filed by the Plaintiff,

Donald Lassman, as the Chapter 7 Trustee of the within debtor, Kristen M. Spalt. Pursuant to the

Amended Complaint, the Chapter 7 Trustee asserted claims regarding the KG Family Trust ("KG

Trust") against the Debtor, individually and as trustee of the KG Trust ("KG Trustee"); her

spouse, James G. Spalt; and her children, James E. Spalt, Eric Spalt, Andrew Spalt, George

Spalt, Carly Spalt, Edward Spalt, and Caroline Spalt (collectively, "Spalt Children"). The Spalt

Children filed a counterclaim against the Chapter 7 Trustee, seeking a declaratory judgment that

they are the beneficiaries of the KG Trust.

For the reasons set forth below, the Court finds that the KG Trust failed since no beneficiaries other than the Debtor were identified when it was formed. In the alternative, the Court finds that the KG Trust was a sham and formed for the illegal purpose of hiding assets from the creditors of James G. Spalt and the Debtor. As more fully set forth below, given the failure of the KG Trust and its illegal purpose, the Court holds that the Debtor was the sole and equitable owner of all property of the KG Trust as of the commencement of the bankruptcy and that all assets of the KG Trust became property of estate as of the filing. The Court further finds that the Spalt Children were not beneficiaries of the KG Trust as of the commencement of the bankruptcy.

With respect to the postpetition transfers of assets, the Chapter 7 Trustee has failed to sustain his burden of proof that the Spalt Children aided and abetted the transfers by the Debtor and James G. Spalt.

Since the Chapter 7 Trustee intends to seek a default judgment against the Debtor and James G. Spalt, the Court will separately rule on the Chapter 7 Trustee's separate claims against those Defendants.

### PROCEDURAL BACKGROUND

The Debtor commenced the bankruptcy proceedings on January 15, 2016. The Chapter 7 Trustee commenced this Adversary Proceeding against the Debtor, individually and as KG Trustee, and the Spalt Children on March 7, 2018. Subsequently, on February 19, 2020, the Chapter 7 Trustee filed the Amended Complaint and joined James G. Spalt as a defendant. In the Amended Complaint, the Chapter 7 Trustee asserted three counts against the Defendants. First, the Chapter 7 Trustee sought a declaratory judgment that the assets of the KG Trust are property of the estate on one of two alternative grounds:  (i) that the Debtor was the sole beneficiary of the

KG Trust; or (ii) that the KG Trust was invalid as contrary to public policy and the Debtor is the

legal and equitable owner of the assets of the KG Trust. In the second count, the Chapter 7

Trustee asserted claims against the Debtor and James G. Spalt for postpetition transfers from the

KG Trust and against the Spalt Children for aiding and abetting such transfers. Finally, in the

third count, the Chapter 7 Trustee asserted claims against the Debtor for breach of her duties as

KG Trustee, and against the Spalt Children for collusion with the Debtor in the breach of her

duties. The Spalt Children filed a counterclaim against the Chapter 7 Trustee, seeking a

declaratory judgment that they are the beneficiaries of the KG Trust.

The Debtor failed to file an answer or response to the original Complaint. James G. Spalt

failed to file an answer or response to the Amended Complaint. Defaults were entered against the

Debtor and James G. Spalt. The Chapter 7 Trustee stated that he will file a motion for default

judgment against the Debtor and James G. Spalt.

After discovery, the Chapter 7 Trustee and the Spalt Children submitted a Joint Pretrial

Memorandum which set forth certain stipulated facts and narrowed the issues of law and fact.

The Court held an evidentiary trial on the claims in the Amended Complaint against the Spalt

Children and the Counterclaim by video on October 26, 2020, and October 28, 2020. By

agreement, direct testimony was submitted by way of affidavit, with additional direct testimony

at trial and the opportunity for cross-examination. The parties also submitted a Stipulation of

Facts dated October 19, 2020, which set forth agreed facts. In addition to the foregoing evidence,

67 exhibits were admitted at trial.

This Memorandum of Decision constitutes the findings of fact and conclusions of law

pursuant to Fed. R. Civ. P. 52(a), made applicable to this proceeding by Fed. R. Bankr. P. 7052.

The findings set forth in this Memorandum are based on the record as a whole and may be

supported by testimony and exhibits that are not specifically cited. Any finding of fact deemed a

conclusion of law is adopted as such, and vice-versa. Findings of fact may also be set forth in the

Analysis section in connection with the application of the law.

### JURISDICTION

The Court has jurisdiction over the Amended Complaint since it seeks the determination

of property of the Debtor's estate pursuant to Section 541 of the Bankruptcy Code.

11 U.S.C. § 541. Pursuant to Section 1334(b) of title 28, the district courts have jurisdiction of

"all civil proceedings arising under title 11, or arising in or related to cases under title 11,"

subject to exceptions not applicable here. 28 U.S.C. § 1334(b). By a standing order of reference

in accordance with 28 U.S.C. § 157(a), the district court in this district has referred all cases

under title 11 and any proceedings arising under, arising in, or related to cases under title 11, to

the bankruptcy court. *See* 28 U.S.C. § 157(a). Matters relating to the determination of property of

the estate, including the turnover of property of the estate, are core proceedings.

28 U.S.C. § 157(b)(2). In the Joint Pretrial Memorandum dated May 29, 2020, the parties agreed

to the entry of a final order by the Court. Accordingly, the Court may hear and finally determine

this matter.

### FINDINGS OF FACT

The following findings of fact are based on the testimony of the witnesses through

affidavits and testimony at trial, the exhibits submitted at trial, and the agreed upon facts in the

Joint Pretrial Memorandum and Stipulation of Facts. The Court has not included facts that are

not relevant to this decision. The Court has also not reconciled minor discrepancies, unless

material or relevant to the rulings.

In 1985, James G. Spalt and the Debtor married and had seven children, the Spalt

Children. As of October 2, 2019, the ages of the Spalt Children were as follows:

James E. Spalt, 33; Eric Spalt, 31; Andrew Spalt, 29; George Spalt, 26; Carly Spalt, 25;

Edward Spalt, 23; and Caroline Spalt, 21.

In 2003, James G. Spalt and three associates formed Villages at Camp Street, LLC, to

develop a housing project in Yarmouth, Massachusetts (the "Camp Street Project"), with

financing from the Massachusetts Housing Financing Agency ("MHFA"). James G. Spalt

personally guaranteed the debt to MHFA.

In 2007, the Camp Street Project was failing financially. James G. Spalt was left to

complete the project on his own after his partners abandoned him. On August 15, 2007, MHFA

made a written demand on James G. Spalt for payment of the sums due regarding the Camp

Street Project.

During this time, James G. Spalt had discussions with his father, George Spalt, regarding

his financial issues. (To avoid confusion with the defendant George Spalt, the senior George

Spalt will be referred to as "G. Spalt"). G. Spalt had extensive experience in real estate and

development. G. Spalt directed James G. Spalt to establish a legal entity to which G. Spalt could

transfer assets and avoid having them being subject to the claims of MHFA against James G.

Spalt.

In late 2007, James G. Spalt had discussions with his cousin, an attorney in Boston,

regarding placing his assets in trust. Following the discussions, the Debtor and James G. Spalt

had discussions about setting up a trust for both of their properties to protect them from the

claims of MHFA.

On February 2, 2008, the Debtor as settlor executed a Declaration of Trust for the

KG Trust ("First KG Trust Agreement"). Although executed in February 2008, the First KG

Trust Agreement was not recorded until July 11, 2008, in the Essex South District Registry of

Deeds in the Commonwealth of Massachusetts. On February 29, 2008, the Debtor as settlor

executed a second Declaration of Trust for the KG Trust ("Second KG Trust Agreement"). The

Second KG Trust Agreement was identical to the First KG Trust Agreement, except for the date

of execution. The Second KG Trust Agreement was recorded with the office of the Albany

County Clerk in the State of New York on March 27, 2008. (The First KG Trust Agreement and

the Second KG Trust Agreement shall be referred to collectively as the "KG Trust Agreement.")

     Under the KG Trust Agreement, the Debtor, as the sole KG Trustee, was to hold real and

personal property:

> . . . solely as nominee, for the sole benefit of the individuals or entities listed in
> the Schedule of Beneficiaries in the proportions stated in said Schedule, which
> Schedule has this day been executed by the Beneficiaries and filed with the
> Trustees with receipt acknowledged by at least one Trustee (hereafter, as it may
> be amended, "Schedule of Beneficiaries").

Exhibit No. 10, p. 1. As a nominee trust, the KG Trust Agreement restricted the ability of the KG

Trustee to act without the consent or direction of the beneficiaries identified on the schedule of

beneficiaries. The KG Trustee had "no power to deal in or with the Trust Estate except as

directed by all of the Beneficiaries." *Id*., p. 2. The KG Trustee was required to pay principal and

income as directed by the beneficiaries, and to pay income in proportion to their respective

interests.

     The Debtor admitted that no schedule of beneficiaries was created as of February 2, 2008,

when the Debtor executed the First KG Trust Agreement. No schedule of beneficiaries dated

February 29, 2008, the date of the Second KG Trust Agreement, was submitted in evidence.

     The Debtor claims that she executed a Schedule of Beneficiaries dated as of

February 10, 2008 ("2008 Schedule"). The 2008 Schedule refers to a Declaration of Trust dated

February 10, 2008. It lists the Debtor and the Spalt Children as "its beneficial interest."

Exhibit 66. It is signed only by the Debtor, without an indication of whether she signed as trustee

or beneficiary. The Spalt Children did not sign the 2008 Schedule. The original of the

2008 Schedule was never produced by the Debtor. Despite the Chapter 7 Trustee's repeated

requests, the Debtor did not produce a copy of the 2008 Schedule to the Chapter 7 Trustee until

August 31, 2016, after the Chapter 7 Trustee commenced an adversary proceeding objecting to

her discharge.

On February 15, 2008, and February 19, 2008, MHFA gave further notices of default to

James G. Spalt. On February 29, 2008, MHFA commenced a civil action in the Superior Court of

the Commonwealth of Massachusetts ("State Court") against James G. Spalt and other

defendants regarding the debt owed to MHFA from the Camp Street Project (the "MHFA 2008

Action"). MHFA also sought and obtained an ex parte real estate attachment against

James G. Spalt in the amount of $7,350,000.00. The writ of attachment was issued on

February 29, 2008, and recorded on March 5, 2008, in the Barnstable County Registry of Deeds.

In March 2008, after the commencement of the MHFA 2008 Action, James G. Spalt and

the Debtor transferred several assets to the KG Trust:

a.     On March 12, 2008, James G. Spalt assigned his fifty percent beneficial interest in

The J.P. Realty Trust to the KG Trust. The J.P. Realty Trust owns commercial

real estate located at 33 Rosary Lane, Hyannis, Massachusetts. Peter Spalt, the

brother of James G. Spalt, owns the other fifty percent beneficial interest in

The J.P. Realty Trust.

b.     On March 12, 2008, James G. Spalt assigned his beneficial interest in S&S Realty

Trust to the KG Trust. At that time, S&S Realty Trust owned a marina located at

67 Riverside Drive, Tiverton, Rhode Island. The marina was sold by S&S Realty

Trust for a purchase price of $2,000,000.00 in July 2008.

c.   On or about March 12, 2008, James G. Spalt and the Debtor assigned all of their

membership interests in Jackbox, LLC, to the KG Trust. At that time,

Jackbox, LLC, owned commercial real estate located at 316 Iyannough Road,

Hyannis, Massachusetts.

After the MHFA 2008 Action was filed, in March and April 2008, G. Spalt also

transferred assets to the KG Trust directly or through entities he owned or controlled:

a.   On March 24, 2008, G. Spalt executed a Deed Indenture of his 50% tenant in

common interest in the real estate known as 123 Everett Road, Colonie, New

York in favor of the KG Trust and PK Harwich Realty Trust for one dollar. Peter

Spalt and his wife were the trustees of PK Harwich Realty Trust.

b.   On March 24, 2008, Schuyler Hills, Inc., an affiliate of G. Spalt, executed a Deed

(Indenture), of its interest in the real estate known as 25, 35, 45 and 47 Nash

Place, Colonie, New York ("Nash Place") in favor of the KG Trust, PK Harwich

Realty Trust, John E. Maloy, Jr., and Peter J. Maloy, with each party receiving a

25% interest in Nash Place for one dollar. On May 23, 2011, the KG Trust and the

other owners of Nash Place executed a deed to transfer Nash Place to Sand Creek

Real Estate Group, LLC, for one dollar.

c.   On April 2, 2008, G. Spalt and his wife, Marilyn Spalt, as trustees of the

10-21 Nominee Trust, deeded certain land located on the Newburyport Turnpike

(U.S. Route One), West Newbury, Essex County, Massachusetts to the KG Trust

for one dollar. Although the deed was executed in April, the deed was not

recorded until July 11, 2008.

d.      On April 3, 2008, G. Spalt executed an Irrevocable Assignment Power in favor of

the KG Trust of twelve and one-half percent of his membership interest in

Schuyler Hills Realty, LLC. Schuyler Hills Realty, LLC, holds an ownership

interest in 121 Everett Road Real Estate Group, LLC, which owned real estate

located at 121 Everett Road, Colonie, New York.

The parties stipulated that G. Spalt transferred the assets with the intent to bypass his son,

James G. Spalt, due to his financial problems from the claims asserted by MHFA. By agreement

of the parties, no other evidence of G. Spalt's intent was admitted at trial.

The KG Trust held other assets, although there was no evidence of who transferred the

assets to the KG Trust. The KG Trust owns an 8% membership interest in Cape 10-21 LLC. The

other members of Cape 10-21 LLC are the descendants of G. Spalt including the siblings of

James G. Spalt, their spouses, and their children. As of February 18, 2011, the Spalt Children

individually and the Debtor each had a separate membership interest in Cape 10-12 LLC, in

addition to the membership interest held by the KG Trust. The KG Trust also owns a 3.82%

interest in Sand Creek Real Estate Group, LLC.

MHFA continued the MHFA 2008 Action and obtained a judgment on August 2, 2010, in

the amount of $6,945,200.70 against James G. Spalt and other defendants. On July 29, 2011, the

State Court issued an execution, in the amount of $10,034,536.87, against James G. Spalt and

another defendant. MHFA sought post-judgment remedies in the MHFA 2008 Action against

James G. Spalt.

On December 18, 2012, MHFA commenced a second action (the "MHFA 2012 Action")

in the State Court against James G. Spalt, the Debtor, the Debtor as KG Trustee, and other

defendants, including entities controlled by the Debtor and James G. Spalt. The MHFA 2012

Action sought to set aside allegedly fraudulent transfers made by James G. Spalt, the Debtor, and

the KG Trust and obtain certain injunctive relief. In the MHFA 2012 Action, the State Court

entered a temporary restraining order and subsequently a preliminary injunction enjoining the

Debtor individually and as the KG Trustee from transferring assets of the KG Trust.

In the MHFA 2008 Action and the MHFA 2012 Action, MHFA sought additional

information about the KG Trust and other entities from the Debtor and James G. Spalt. Despite

repeated requests, neither the Debtor nor James G. Spalt produced any schedule of beneficiaries

for the KG Trust in the MHFA 2008 Action or the MHFA 2012 Action.

The State Court subsequently held the Debtor and James G. Spalt in contempt for

violating its orders, including the preliminary injunction and the temporary restraining order. In

particular, the State Court found that the Debtor and James G. Spalt had caused funds to be

transferred out of the bank accounts of the KG Trust in violation of its orders.

Prior to the bankruptcy, James G. Spalt and the Debtor exercised control over the bank

accounts of the KG Trust, which were maintained at TD Bank. The Debtor and James G. Spalt

used the funds in bank accounts of the KG Trust to pay for expenses unrelated to the assets of the

KG Trust, including personal expenses. In addition, James G. Spalt and the Debtor wrote checks

for "draws" to pay themselves personally from the funds of the KG Trust. The check ledger for

the KG Trust for 2011 also showed multiple "draws" to Cape Oceanic, LLC, an entity not owned

by the KG Trust. No evidence was offered that any of the Spalt Children authorized any

transactions by the KG Trust, including the payments from the bank account.

James G. Spalt and the Debtor also used the KG Trust account to deposit funds from

assets or other entities not held by the KG Trust. In 2011, the KG Trust deposited approximately

$415,567 from sale proceeds received by Cape Oceanic, LLC, for the sale of real estate it owned.

The funds were subsequently wired out and paid to a personal account of the Debtor.

The Debtor and James G. Spalt also caused proceeds of assets held by the KG Trust to be

paid to others and not to the KG Trust. The KG Trust was a fifty percent owner of S&S Realty

Trust. In July 2008, S&S Realty Trust sold its principal asset, a marina, for a purchase price of

$2,000,000, and received net sale proceeds of approximately $1,893,000. None of the proceeds

were paid to the KG Trust as a fifty percent beneficiary. Instead, in September 2008, $1,880,000

of the proceeds were paid to the Debtor and deposited in her personal account. The Debtor and

James G. Spalt used a substantial portion of the sale proceeds to set up and organize certain

entities in Louisiana and to purchase ships that these entities owned and operated. No evidence

was offered that any of the entities or ships were placed in the name of the KG Trust.

In 2013 and 2014, all of the income and losses for the KG Trust were allocated to the

Debtor. No other tax returns of the KG Trust were submitted in evidence.

On January 15, 2016, the Debtor commenced the bankruptcy proceedings. In her

bankruptcy schedule of assets ("Bankruptcy Schedules"), the Debtor identified her interest in the

KG Trust as "Trustee/beneficiary." For other trusts where she claimed only a partial interest, the

Debtor listed a percentage ownership. But she did not state that she only owned a percentage of

the beneficial interest in the KG Trust. Although the Debtor listed several assets of the KG Trust,

she valued her interest in the KG Trust as $0.00. In addition, she listed herself as fifty percent

beneficial owner of The J.P. Realty Trust, although it was owned by the KG Trust. Finally, she

listed a TD Bank account for the KG Trust with a balance of $1,077 as her personal asset.

After the commencement of the bankruptcy, the Chapter 7 Trustee sought documents and

records from the Debtor, including the schedule of beneficiaries for the KG Trust. Despite

repeated requests, the Debtor failed to produce any schedule of beneficiaries. After the Debtor

failed to comply with requests for documents and additional information, on August 25, 2016,

the Chapter 7 Trustee commenced a separate adversary proceeding against the Debtor objecting

to her discharge. The Debtor finally delivered a copy of the 2008 Schedule to the Chapter 7

Trustee on August 31, 2016, only after the discharge adversary proceeding had been filed. She

never produced the original 2008 Schedule and claimed at trial she could not locate an original.

On October 15, 2018, the Court entered an order denying the Debtor's discharge,

granting the Chapter 7 Trustee's motion for summary judgment. The Court found that the Debtor

had knowingly and fraudulently failed to provide documents to the Chapter 7 Trustee, including

documents relating to the KG Trust.

After the commencement of the bankruptcy, on February 14, 2018, the Debtor as

KG Trustee opened a new checking account for the KG Trust with Trustco Bank in New York.

The Debtor made an initial deposit of checks totaling $223,497.00, payable to the KG Trust. The

Chapter 7 Trustee was not informed of the Trustco bank account or the deposit. On

April 6, 2018, the Debtor paid $10,000.00 from the Trustco account to an attorney representing

some of the Spalt Children in other litigation.

After this Adversary Proceeding was commenced, the Debtor and the Spalt Children

executed a document entitled "Revised Schedule of Beneficiaries" ("2018 Schedule"). The 2018

Schedule stated that it "reaffirmed" the 2008 Schedule and set forth a percentage of 12.5% for

each of the Debtor and the Spalt Children. Exhibit 65. It was executed in March and April 2018

by the Debtor as trustee and beneficiary, and by each of the Spalt Children as beneficiary. The

2018 Schedule was not provided to the Chapter 7 Trustee or authorized by the Court.

On September 14, 2018, the Debtor executed a resignation purporting to resign as the

KG Trustee. Under the KG Trust Agreement, to resign, the KG Trustee must deliver a written

notice to each beneficiary. The resignation does not take effect until the later of the date in the

resignation or recording in the Registry of Deeds. No notice of the resignation was given to the

Chapter 7 Trustee. No evidence was submitted that the resignation was recorded in the Registry

of Deeds in New York or Massachusetts.

In September 2018, the Debtor and the Spalt Children executed a document entitled

Appointment of Successor Trustee ("Appointment Document"). Pursuant to the Appointment

Document, James G. Spalt was named as the successor KG Trustee to succeed the Debtor. The

Appointment Document was executed by the Debtor and the Spalt Children on multiple dates

from September 17, 2018, to September 28, 2018. The Chapter 7 Trustee did not execute the

Appointment Document as holder of the Debtor's beneficial interest. Nor did the Chapter 7

Trustee receive notice of the Appointment Document at the time of its execution.

James G. Spalt executed a Trustee Certificate on September 17, 2018, stating that he

accepted the appointment as successor KG Trustee. The KG Trust Agreement requires that the

acceptance of a successor trustee be recorded in the Registry of Deeds. No evidence was

submitted that the Trustee Certificate executed by James G. Spalt was recorded in the Registry of

Deeds in New York or Massachusetts.

As of September 14, 2018, when the Debtor purportedly resigned as the KG Trustee,

there remained $213,553.59 in the Trustco account. On October 10, 2018, James G. Spalt

transferred $200,162.75 via wire transfer from the Trustco account to his personal bank account

at TD Bank. He subsequently wrote a check to himself in the amount of $29,750.00 from the

Trustco account, leaving a balance in the account of only $261.18. James G. Spalt spent the

funds in the TD Bank account on personal and family expenses.

None of the Spalt Children had any knowledge of the creation of the KG Trust at the time

of its formation. The earliest they became aware of the KG Trust was 2012. The Spalt Children

admitted that they executed the 2018 Schedule.

None of the Spalt Children testified. Thomas Curran, an attorney for MHFA, testified

regarding admissions made by George Spalt and Andrew Spalt in testimony in the MHFA 2012

Action. Both testified that they did not sign any documents for the KG Trust other than the 2018

Schedule and the Appointment Document. George Spalt testified that he had no documents for

the KG Trust, and no knowledge of its finances or payments made from the KG Trust. Andrew

Spalt testified that he had no documents for the KG Trust and had no knowledge of its finances.

Andrew Spalt also testified that he was not informed when James G. Spalt made the transfers

from the Trustco account.

**ANALYSIS**

As more fully set forth below, the assets of the KG Trust were property of the Debtor as

of the commencement of the bankruptcy and became property of the estate as of the filing.

Although the Debtor purported to create the KG Trust, the KG Trust is unenforceable. First, the

KG Trust fails since there were no beneficiaries, other than the Debtor, at the time of its

formation. In the alternative, the KG Trust is void as a matter of public policy, since it was

formed for the purpose of shielding assets of James G. Spalt and the Debtor from their creditors,

while allowing them to retain full control and ownership of the assets. Since the KG Trust failed,

any assets belonging to the Debtor purportedly transferred to the KG Trust remained her

property. In addition, because they participated in the illegal purpose of the KG Trust, the assets

of James G. Spalt and G. Spalt that were transferred to the KG Trust were assets of the Debtor as

of the filing of the bankruptcy and became property of the estate.

As to the count against the Spalt Children, the Chapter 7 Trustee has failed to meet his burden of proof that the Spalt Children knowingly participated in the transfers of the funds in the KG Trust. Consequently, he fails to prevail on his claims against the Spalt Children for aiding and abetting the postpetition transfer of assets of the estate. Since the Court has found that the KG Trust was unenforceable, the Court need not address the Chapter 7 Trustee's alternative theory that the Spalt Children colluded with the Debtor in her breach of duties as KG Trustee.

Because the Chapter 7 Trustee intends to seek a default judgment against the Debtor and James G. Spalt, this Memorandum of Decision does not address the Chapter 7 Trustee's claims against them for the postpetition transfer of assets of the estate. The Court will separately address those claims on an appropriate motion for default judgment filed by the Chapter 7 Trustee.

### A.     The KG Trust Fails Because No Beneficiaries Other Than the Debtor Existed at its Creation

Based on the evidence, the only beneficiary at the time of the formation of the KG Trust, if any, was the Debtor. As a result, the KG Trust fails, either because there were no beneficiaries, or because the only beneficiary was the Debtor.

The Court finds that no Schedule of Beneficiaries was executed at the time the KG Trust was formed. The First KG Trust Agreement was executed by the Debtor as sole trustee on February 2, 2008. The Second KG Trust Agreement was executed by the Debtor on February 29, 2008. The two KG Trust Agreements are substantially the same, except for the dates of execution. Each KG Trust Agreement states that a schedule of beneficiaries was executed concurrently with the KG Trust Agreement. The schedule of beneficiaries was required to be executed by the beneficiaries, with a receipt acknowledged by the KG Trustee. In addition, the schedule was required to reflect the proportion owned by each of the beneficiaries. No schedules of beneficiaries were submitted dated February 2, 2008, or February 29, 2008.

The Court finds that the 2008 Schedule was not executed at the time the KG Trust was formed. Instead, the Court finds that the 2008 Schedule is a fabrication, created by the Debtor or James G. Spalt as a result of the litigation. The findings are based on the timing of its production, the lack of any original document, the content of the 2008 Schedule, and the conduct of James G. Spalt and the Debtor in dealing with the assets of the KG Trust.

A copy of the 2008 Schedule was belatedly produced by the Debtor in 2016. During extensive litigation with MHFA from 2008 to 2016, neither the Debtor nor James G. Spalt produced the 2008 Schedule in response to discovery and repeated requests by MHFA. Despite repeated requests by the Chapter 7 Trustee, the Debtor did not produce the 2008 Schedule for more than seven months after filing the bankruptcy. She only produced a copy of the 2008 Schedule after the Chapter 7 Trustee commenced an adversary proceeding seeking to deny her discharge. And she has never produced the original 2008 Schedule.

The content of the 2008 Schedule reinforces its fabrication. As an initial matter, the document is undisputedly an electronic copy rather than the original. The 2008 Schedule refers to a Declaration of Trust dated February 10, 2008, but neither the First nor the Second KG Trust Agreement was dated February 10, 2008. The KG Trust Agreement required that the Schedule of Beneficiaries be signed by the beneficiaries, with a receipt by the KG Trustee. Although the 2008 Schedule lists the Debtor and each of the Spalt Children as the eight beneficiaries, none of the Spalt Children signed the document. The Debtor's signature is not notarized. The 2008 Schedule does not include any statement of the proportion owned by each beneficiary, as required by the KG Trust Agreement.

The 2008 Schedule is also inconsistent with the Bankruptcy Schedules filed by the Debtor. The Debtor listed herself as "Trustee/beneficiary" of the KG Trust, but did not indicate

she only owned a portion of the beneficial interest. In contrast, she separately listed her

percentage ownership of other trusts. She also listed a bank account of the KG Trust and its

beneficial interest in The J.P. Realty Trust as her own property.

The Debtor's conduct with the assets of the KG Trust was inconsistent with the Spalt

Children being the beneficiaries. Under the KG Trust Agreement, the KG Trustee had no power

to act without the direction of the beneficiaries. But there is no evidence that the Debtor, as KG

Trustee, was directed by or even consulted with any of the Spalt Children as alleged beneficiaries

of the KG Trust for any transfers. No evidence of written direction or consents by the Spalt

Children, or any beneficiary, was submitted for any actions of the Debtor as the KG Trustee.

There is no credible evidence that prior to the bankruptcy any distributions from the

KG Trust were paid to the Spalt Children. Under the KG Trust Agreement, the KG Trustee was

required to hold assets for the benefit of the beneficiaries and to pay income to the beneficiaries

in their proportionate interest. In contrast to the requirements of the KG Trust Agreement,

substantial uncontroverted evidence shows that the Debtor used the purported assets of the KG

Trust as her own. James G. Spalt also acted with respect to the assets of the KG Trust as his own,

despite the fact that he was neither a trustee nor an alleged beneficiary. The Debtor and

James G. Spalt made payments from the KG Trust to third parties without the KG Trust

receiving any benefit. They also made payments from the bank accounts of the KG Trust for

their own benefit, including paying themselves. The bank accounts of the KG Trust were used to

deposit funds from assets that were not owned by the KG Trust. In addition, proceeds of the

assets in the KG Trust were transferred to others, including the Debtor and James G. Spalt. The

Debtor declared the gains and losses of the KG Trust on her individual income tax returns. There

is no evidence that the Spalt Children treated the KG Trust with respect to their taxes.

The testimony by James G. Spalt and the Debtor regarding the KG Trust, the 2008 Schedule, and the intended beneficiaries of the KG Trust was self-serving and otherwise unsupported. The Debtor's testimony was generally not credible. She exercised selective memory, repeatedly saying she did not remember key facts. There is no objective evidence to show when the 2008 Schedule was actually created or that the Spalt Children were intended by the Debtor to be beneficiaries. The testimony of the Debtor is undercut by the Debtor's complete disregard for the terms of the KG Trust Agreement and her exercise of dominion and control of the assets of the KG Trust for her benefit and the benefit of James G. Spalt.

After the commencement of the Adversary Proceeding, the Debtor and the Spalt Children purported to "reaffirm" the 2008 Schedule by executing the 2018 Schedule. Any action on behalf of the Debtor was void, since any interest she held belonged to the bankruptcy estate. In addition to being ineffective, the 2018 Schedule reinforces the lack of any credibility of the 2008 Schedule.

The Spalt Children contend that the KG Trust was intended as a vehicle for G. Spalt, their grandfather, to gift them assets and avoid the reach of James G. Spalt's creditors. The only evidence of the intent of G. Spalt is a stipulation that G. Spalt intended to "bypass" his son due to the financial problems arising from the claims by MHFA against James G. Spalt. However, there was no evidence to demonstrate that the intended beneficiaries were the Spalt Children. Instead, the evidence supported the inference that the Debtor was the intended beneficiary. G. Spalt was an experienced businessperson involved in sophisticated real estate transactions, including multiple trusts and other entities. If the intent was to benefit the Spalt Children, he could have created appropriate trusts that he controlled or deeded directly to the Spalt Children. For example, each of the Spalt Children is listed as an individual beneficiary of Cape 10-21 LLC

along with the other grandchildren of G. Spalt.

Given the conduct of the Debtor and James G. Spalt, it is reasonable to infer that the Debtor was the only intended beneficiary. No other individual or entity's status as a beneficiary is supported by the record.

Since either there was no beneficiary, or the Debtor was the only beneficiary, the KG Trust failed under its terms and under Massachusetts law. Under Section 3.3 of the KG Trust Agreement, "if a sole Trustee and a sole Beneficiary are one and the same person, legal and equitable title hereunder shall merge as a matter of law." Exhibit 10, p. 2. Under Massachusetts law, "no [nominee] trust exists when the same individual is the sole settlor, sole trustee, and sole beneficiary." *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 409, 730 N.E.2d 325, 334 (2000). Similarly, under Massachusetts law, if no beneficiary was initially designated in writing, the trust fails. *Arlington Tr. Co. v. Caimi*, 414 Mass. 839, 848, 610 N.E.2d 948, 953 (1993).

**B.     The KG Trust is a Sham and Void Since it was Created to Hide the Assets of the Debtor and James G. Spalt from Creditors**

In the alternative, the KG Trust is void as a matter of public policy. The Chapter 7 Trustee has demonstrated that the purpose of the KG Trust was to hide assets from the creditors of James G. Spalt and the Debtor. Both the Debtor and James G. Spalt admitted that the KG Trust was formed to avoid their assets being reached by creditors. Coupled with their continued exercise of control and ownership over the assets of the KG Trust, the KG Trust is a sham.

A trust created for the illegal purpose of delaying, hindering, or defrauding creditors is invalid. George Gleason Bogert, George Taylor Bogert, Helene S. Shapo, Bogert's The Law of Trusts and Trustees, § 211 (2024). A debtor cannot use a trust as an alias to shield property from his creditors. *Cunningham v. Bright*, 228 Mass. 385, 388, 117 N.E. 909, 910 (1917). Where a debtor retains control and possession of assets that are purportedly in trust to avoid his creditors,

19

the trust is a sham and void. *Fiumara v. Galvin*, No. ESCV200800827A, 2011 WL 3276675, at

*15 (Mass. Super. Apr. 13, 2011), *aff'd sub nom. Fiumara v. Fiumara*, 83 Mass. App. Ct. 1111,

982 N.E.2d 73 (2013).

The KG Trust was formed on the eve of litigation by MHFA against James G. Spalt.

After the litigation commenced, the Debtor and James G. Spalt transferred assets to the KG Trust

for nominal consideration. The Debtor and James G. Spalt continued to treat the transferred

assets as their own. The Debtor made transfers from the accounts of the KG Trust to her personal

account or for her benefit. In addition, although he was not the KG Trustee, James G. Spalt

exercised control over the assets of the KG Trust. He was a signatory on the bank account of the

KG Trust, causing payments to be made for his benefit. Upon the disposition of assets in the KG

Trust, the proceeds were directly paid to the Debtor and James G. Spalt, instead of to the KG

Trust or to any other alleged beneficiary. The Debtor claimed all of the income and expenses of

the KG Trust on her tax return. The assets of the KG Trust remained under the control and

domination of the Debtor and James G. Spalt. Given the retained control and domination of the

Debtor and James G. Spalt over the assets, the KG Trust was a sham.

### C.      The Assets of the KG Trust are Property of the Estate

The assets in the KG Trust were property of the Debtor and became property of the

estate, given the failure of the KG Trust and its illegal purpose. As to the Debtor's assets, when a

trust fails, whether for illegal purpose of lack of beneficiary, the assets remain those of the

settlor. In this case, any asset transferred by the Debtor to the KG Trust remained her property.

As property of the Debtor, such assets became property of the estate as of the commencement of

the bankruptcy.

The assets transferred by James G. Spalt and G. Spalt to the KG Trust also were property

of the Debtor and are property of the estate. When a trust fails, the usual rule is that any transfers

of property are held in resulting trust for the benefit of the original transferor. An important

exception is when such a resulting trust would be inconsistent with public policy because of the

illegal purpose of the trust. A resulting trust does not arise in such a case if the policy against

permitting unjust enrichment of the transferee (i.e., the intended trustee) is outweighed by the

policy against giving relief to a person who has entered into an illegal transaction. Restatement

(Third) of Trusts, § 8 (2003).

Such is the case with respect to the transfers of assets by James G. Spalt and of G. Spalt

to the KG Trust. James G. Spalt actively participated in hiding the transferred assets from his

creditors, continuing to treat the transferred assets as his own, while evading creditors. He

orchestrated multiple transfers and payments from the KG Trust for his own purpose. The

evidence also shows that G. Spalt was aware of and assisted in the illegal purpose of the KG

Trust. G. Spalt was an experienced and knowledgeable real estate investor. It was G. Spalt who

suggested the establishment of the KG Trust to avoid creditors of James G. Spalt. The timing of

the transfers also confirms that G. Spalt knew and participated in an effort to allow the Debtor

and James G. Spalt to avoid creditors. G. Spalt did not transfer any assets into the KG Trust until

shortly after the MHFA 2008 Action commenced. Given their active participation in the

fraudulent transfers, public policy supports not giving any relief to James G. Spalt or G. Spalt by

return of any assets transferred to the KG Trust.

### D.    The Trustee Failed to Sustain His Burden of Proof Against the Spalt Children

The Chapter 7 Trustee failed to show by a preponderance of the evidence that the Spalt

Children colluded with the Debtor and James G. Spalt or otherwise knowingly participated in or

authorized the postpetition transfers of assets of the estate. The Chapter 7 Trustee failed to

demonstrate that any of the Spalt Children participated in the transfers by James G. Spalt from the KG Trust. To the contrary, the evidence demonstrated that the Spalt Children had no knowledge and did not authorize any transfers from the KG Trust. The evidence was consistent that the Spalt Children had no knowledge about the finances of the KG Trust or its assets, whether prior to or after the bankruptcy.

The Chapter 7 Trustee also failed to demonstrate that the Spalt Children are liable on a theory of "aiding and abetting" their parents by the execution of the 2018 Schedule or the Appointment Document. To be liable for "aiding and abetting," the Chapter 7 Trustee must show that the Spalt Children were aware of "the overall wrongful activity" and that they "knowingly and substantially" assisted the wrongful act. *In re McMullen*, 386 F.3d 320, 332 (1st Cir. 2004). The evidence showed that James G. Spalt alone diverted the funds without the knowledge or consent of the Spalt Children. The Chapter 7 Trustee failed to show that the Spalt Children were aware of the overall scheme to divert funds, that their participation was done with knowledge of the consequences, or that they were "substantially" involved in the diversion of the funds.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Debtor was the sole and equitable owner of all property of the KG Trust and that all assets of the KG Trust became property of the estate as of the commencement of the bankruptcy. The Court further finds that the Chapter 7 Trustee has failed to sustain his burden of proof that the Spalt Children are liable to the estate for the postpetition transfers from the KG Trust.

Since the Chapter 7 Trustee intends to file a motion for default judgment against the

Debtor and James G. Spalt, the Court will separately set a deadline for any such motion. After

ruling on any motion for default judgment, the Court will enter judgment consistent with this

decision.


Dated:       April 3, 2025                    By the Court,



                                             Janet E. Bostwick
                                             United States Bankruptcy Judge